3-15-0-5-4-7 Mary Whipple, Monty Whipple, et al. Appellants by Carrie Nelson v. Village of North Utica & Aramoni, LLC Appellees by Ronald Cope Mr. Nelson? Ms. Nelson, please. Good afternoon. May it please the Court, my name is Carrie Nelson and I represent the plaintiffs' appellants in this matter. I'd like to start by emphasizing two equally important points. First, this appeal arises in the context of a Section 2-615 motion to dismiss. The only question before the circuit court was the sufficiency of the allegations of the complaint. Second, this case is about a real threat of devastating harm to the health and welfare of these plaintiffs, including pollution, disease, and physical disruption and damage. All of these factual allegations are well-pledged in the complaint, and under the Section 2-615 standard, the Court was required to accept these allegations as true. The circuit court, however, failed to apply that standard. The circuit court weighed allegations as if they were evidence, which of course, at that stage in the case, the plaintiffs had not yet had the chance to develop. The Court also made inferences in defendants' favor rather than plaintiffs' and also made findings uncalled for at the motion to dismiss stage. This is clear reversible error. Accepting all of plaintiffs' well-pleaded allegations as true, plaintiffs have sufficiently alleged that this particular mine in this particular location constitutes a prospective nuisance and that North Utica improperly authorized the proposed mine in violation of plaintiffs' fundamental substantive due process and equal protection rights. During today's argument, I will address Count 3 of our complaint, prospective nuisance, and Count 1, substantive due process, and we will rest on the arguments in our brief with respect to the equal protection claim in Count 2. Turning first to prospective nuisance. Prospective nuisance is a long-standing and well-recognized claim under Illinois common law that continues to be applied in more recent years. Because plaintiffs are bringing a claim for prospective private nuisance, plaintiffs must allege two things. First, a private nuisance, and second, that that private nuisance is highly probable to occur. Here, plaintiffs state a claim for private nuisance because they allege a substantial, intentional, and unreasonable invasion of the use and enjoyment of their land. The fact that this is a private nuisance is significant. These are real people who live and work on this land 24 hours a day, and the harms I will detail in a moment are real harms to their health, their homes, and the farms that provide their livelihoods. The Supreme Court in the Chicago flood litigation case, which is cited on page 16 of our brief, listed typical examples of private nuisance to include the following. Smoke, fumes, dust, vibration, or noise produced by a defendant on his own land and impairing the use and enjoyment of neighboring land. The complaint here alleges exactly these types of harms and more. The minor constitute a nuisance due to the following harms. Exposure to silica sand, a known carcinogen that causes lung cancer and other serious and permanent health issues. Flooding of the land where the plaintiffs live and farm from the discharge of over one million gallons of water a day into the Pequem Sogging Creek. Damage to plaintiffs' wells, which supply their drinking water and water supplies. Blasting with explosives close to plaintiffs' homes and farms from sunup to sundown up to six days per week. Structural and physical damage to the plaintiffs' homes and farms from the blasting. Extreme noise up to 133 decibels from the blasting, as well as from drilling and rock crushing equipment. Extremely bright lighting shining evening and night, disturbing the plaintiffs' sleep. And diesel exhaust, noise, and congestion, as well as safety threats from truck traffic that will be concentrated near the plaintiffs' homes. There is nothing vague about these allegations. These allegations of harm are extensive and they are specific to these particular plaintiffs from this mine. The complaint also alleges that the operation of the mine unreasonably conflicts with plaintiffs' use and enjoyment of their homes and farms. Illinois courts recognize the right to be protected from invasions that affect the livability of a home. Plaintiffs' only recourse to avoid these harms would be to leave their homes and farms where their families have lived and farmed for generations, in some cases for well over a century. In addition to stating the elements of a private nuisance claim, the complaint alleges not only are these harms highly probable, but that they are virtually certain to occur. These are not bare allegations without factual support. They are expressly grounded in defendants' own statements and documents. For example, paragraph 129 of the complaint states, The operation of the proposed mine will necessarily subject plaintiffs to blasting, truck traffic, noise, and bright lighting. The 24-hour operations of the mine and blasting with explosives during all daylight hours up to six days per week are documented in the annexation agreement, which is attached to the complaint as Exhibit E. The truck traffic is supported by citing to airmony testimony from the hearings regarding the extent of increased truck traffic associated with the mine, including that up to 146 truckloads of sand will be leaving the mine every day. Paragraph 129 also states, It is highly probable that plaintiff's wells will be negatively impacted. Again, this is a well-pled allegation of probability. Now, this all came from your attachment? Just what you were saying? The immediate preceding quote, It is highly probable, comes from the complaint. That quote is supported by reference to airmony testimony at the annexation hearings regarding the proposed mine, where testimony was given regarding the impact, and it was said that the impact would be at a minimum of up to 1,500 feet away. And the prior reference, yes, to the operations of the mine,  that is attached to the complaint in the annexation agreement, which is Exhibit E. While these harms are perspective, they are not speculative. There is no need for these plaintiffs to speculate about the probability of harm because the defendants have laid out exactly how this mine will operate. Based on defendants' own statements, these harms will happen. In the face of these well-pleaded allegations, the circuit court made a decision to dismiss the complaint based on whether it could conclude at that juncture that the ultimate remedy of injunctive relief would be necessary, stating, quote, I do think I'm speculating a little bit about the injunction issue, end quote. That was not the court's role. The court's only role was to assess the sufficiency of the allegations in the complaint. The plaintiffs did not even seek preliminary injunctive relief. The dismissal of the complaint based on the court's speculation at the pleading stage that injunctive relief was not necessary was clear reversible error. As the court recognized itself practically when it said, quote, I don't feel all that comfortable, frankly, in dismissing count three, end quote. Also largely ignoring these extensive alleged harms, defendants resort to arguing without legal support that the mine will be regulated by existing statutes and regulations and therefore that its operations cannot constitute a nuisance. This is not the law in Illinois.  Quote, I'm sure that someone, some agency, will have jurisdiction to deal with whatever problem results, end quote. Illinois courts have repeatedly recognized and enjoyed prospective and existing nuisances, even where governmental regulations also address the activity or the business at issue. For example, in the Bensonville, Wilsonville, and the Nichols case, all cited on page 25 of our opening brief. Accepting defendants' argument as true in this regard would prohibit courts from ever finding that a regulated activity or business could constitute a nuisance. Again, this is not the law in Illinois. Moreover, the regulations and agreements that defendants cite to do not afford plaintiffs protection from the harms that they have alleged in this complaint. For example, again, the plaintiffs allege significant harm from exposure to silica sand, a known carcinogen. Defendants are correct in that recognizing just how dangerous silica sand is, OSHA regulates it in the workplace. None of those OSHA regulations, however, extend to protect the plaintiffs, who of course do not work at the mine, but live in a farm near to the mine. It would be wrong to require these plaintiffs to wait and suffer damage to their lungs, their water supplies, and destruction of their farmland before they can state a nuisance claim. Cancer and contaminated water supplies are tragic harms, and the permanent nature of these injuries is exactly why the law affords individuals the ability to protect themselves from these types of harms that have not yet occurred. Plaintiff's complaint sufficiently alleges facts in support of their prospective nuisance claim to withstand defendant's Section 2615 motion to dismiss. Turning to plaintiff's substantive due process claim, Illinois law recognizes individual's substantive due process rights. That includes the right to use and enjoy one's own property. The traditional test for assessing whether a zoning action violates these types of substantive due process rights were set forth in the LaSalle and Sinclair cases. Defendants indicate in their brief that LivingWord somehow supplanted the LaSalle-Sinclair test. This is not correct. Illinois courts have continued to apply the LaSalle-Sinclair factors to assess substantive due process challenges to zoning ordinances since the court's decision in LivingWord. Rather than rendering the LaSalle-Sinclair factors inapplicable, LivingWord gave further context to the scope of the allegations of harm that must be alleged by a plaintiff to state a substantive due process claim. Under either standard, accepting plaintiff's well-pleaded allegations as true, they have alleged a claim sufficient to withstand a Section 2615 motion to dismiss. First, under LaSalle-Sinclair, those eight factors assist a court to assess whether a plaintiff has sufficiently stated a claim for violation of their substantive due process rights. The factors were developed in the context of a direct, not a third-party challenge to a special use decision, so not all of the factors fit squarely with the facts of this case. In any event, however, those factors are not a rigid checklist, and as LaSalle court itself made clear, no one of those factors is controlling. There is also no requirement to allege facts in support of each and every factor at the pleading stage. As the Rodriguez court recognized, which is cited on page 31 of our briefs, while the factors can shed some light on the pleading adequacy of a complaint, not all of them can be meaningfully applied at the pleading stage. Here, nonetheless, the circuit court assessed each LaSalle-Sinclair factor as if both parties had presented evidence relating to that factor, and ultimately made findings based on the court's weighing of whether that evidence either favored the plaintiffs or the defendants. This was improper in considering a section 2615 motion to dismiss. For example, with respect to factor two, which is the reduction of the value of plaintiffs' homes and farmland, the court acknowledged that plaintiffs pled in their complaint that the value of their land will be negatively impacted by the mine, but then stated, quote, I think that the factor may largely be neutral, end quote. With respect to factor seven, regarding the community's land development plans, the court said, the court found that the mine is not a violation of the comprehensive plan, despite plaintiffs' well-pleaded allegations directly to the contrary, and then stated, quote, perhaps I'm wrong about that, end quote, and continued to make a finding, again, that the seventh factor favors the defendants. With respect to factor eight, which is the evidence or lack of evidence for the community need for the proposed use, the court again, directly contrary to plaintiffs' allegations, said, quote, it appears to me that there is a need for a sand mine. All of these statements demonstrate the court's failure to adhere to the 2615 standard. It was not the court's role to weigh competing evidence at the pleading stage. The court was required to accept all of the well-pleaded allegations of the complaint as true. Like the plaintiffs in Rodriguez, the plaintiffs here have clearly stated a constitutional claim because they have alleged facts that, when accepted as true, meet a significant number of the LaSalle-Sinclair factors. Plaintiffs also sufficiently stated claim for violation of their substantive due process rights under the standards set forth in Living Word. All Living Word requires is that plaintiffs allege unique adverse effects from the proposed mine's particular proposed use at its particular location that are different from the effects that would inherently occur if a mine was located elsewhere in the zone. Defendants argue in their brief on appeal that the complaint must show that the area where the mine is to be located is uniquely different from all other areas in the A1 district where mines are permitted to be located. This is not correct. There is no case law requiring plaintiffs to plead exactly what harms would occur at every other location in the zone. The Living Word standard instead focuses on the unique effects caused by the mine's particular proposed use at its particular proposed location, and the plaintiffs have pled exactly this in their complaint. For example, in paragraph 62, the complaint states, the proposed mine will cause injuries to these plaintiffs that are different from what would be caused by sand mines at other locations within the A1 agricultural districts. The complaint then goes on to allege 11 pages of unique harms, which I went through in the context of the prospective nuisance claim. As just an example, while plaintiffs agree that all sand mines can generate noise and air pollutions, plaintiffs specifically allege that because of the permissive terms of this annexation agreement, for example, allowing the 24 per hour operations and the blasting to occur up to six days per week, and because this mine is located in such close proximity to all of these plaintiffs' homes and farms, that it will result in unique harms to these plaintiffs. In addition, in paragraphs 44 and 82 of the complaint, the plaintiffs plead that due to the mine's close proximity to the Pekinsaugan Creek, which runs through the land of several of the plaintiffs and abuts the land of several other plaintiffs, and the discharge of the enormous amounts of water into that creek, the operation of the mine will result in the unique harm of the flooding of plaintiffs' properties, and the additional harms of reducing drainage on the plaintiffs' farmland, an increase in erosion, and a decrease in crop yield. Now you're saying, you're saying that you don't have to talk about other mines located elsewhere to establish uniqueness? In order, that's correct. There is no case law that requires the plaintiffs to plead what the harms, exactly what the harms would be if this mine would be located at a different location within the zone. Under a living war test, no, I don't believe that the other mines are relevant. Well, it seems there has to be some comparison to establish uniqueness. Plaintiffs specifically allege that the harms that will be caused here are unique harms, and that they are only going to occur because of this mine's unique location. And we do plead fact, showing that this mine is unique, given the fact that it is located directly next to and sits right in the midst of these plaintiffs' homes and farms, and due to the fact that the Peekemsaugam Creek is running directly next to it and running through the land. The creek is clearly probably a very unique situation for this mine, as opposed to other mines that are permitted elsewhere in that area. That's correct. Because there are other permitted mines in that area, are there not? There are other mines in the area, yes, not directly next to any of these plaintiffs. This particular mine is much closer. But located adjacent to people's farmsteads and homes, presumably. I don't know, Your Honor, whether those are located. Yes, they are in close proximity to certain homes. In addition, the complaint does contain other allegations of uniqueness, including the fact that this proposed mine site does not have ready access to a rail line for sand transport. As a result, this will result in greater traffic, noise, and safety threats from those 146 trucks that are going to be leaving that mine every day. In addition, the annexation agreement here, which is, again, particular to this proposed mine and how it will operate, states that those trucks are prohibited from using the Village of North Utica's roads, except in the case of local deliveries. And the effect of that is that all this truck traffic is going to be concentrated right on the roads that these plaintiffs use multiple times a day, as we've put in the complaint, to get anywhere that they need to be going. They're going to be facing safety threats and the noise and all the other effects of having this concentration of traffic right by their homes due to the location. This is also a fact that where this property was located was protected by a moratorium by the county of LaSalle. It was. At the time that the land was going to be annexed into North Utica, as we have put in the complaint, there was a moratorium that was operating in LaSalle County at that time, and so the mine could not have been located there. And so by being lifted out of that area and annexed into Utica, you were suffering a specific harm than other people who were within LaSalle County. That's exactly right, Your Honor. I do not know whether the LaSalle County moratorium reference there is in effect. There are other moratoriums. I know that there were moratoriums since that time that went into effect that had to do, I do not know whether they are all still operative, that had to do with high-capacity wells and banning the use of high-capacity wells, which the mines would rely on for their operations. Rather than assessing the sufficiency of these allegations as it was required to do, the circuit court, based on no evidence, made an improper finding that if the mine were located in another location, there would be, quote, virtually identical complaints, and dismissed the complaint on that basis. As we just discussed, this finding is not only contrary to the allegations of the complaint, it is entirely improper at the motion-to-dismiss stage. For all of these reasons and those stated in our brief, we ask that the court reverse the dismissal of Plaintiff's Second Amended Complaint so that these plaintiffs may have their day in court. Thank you, Mr. Samuelson. Mr. Cope. Just to correct something for the record, if that may please the court, my name is Ronald Cope. The bulk of the property that is involved here was already in North Utica. It was only a smaller section that was annexed into North Utica. In regard to the law here, and in listening to counsel, it's important to know what the Illinois Supreme Court has said in regard to pleading, and I want to quote from the Illinois Supreme Court in Max College v. Celotex Corporation. If a motion-to-dismiss admits only facts well pleaded and not conclusions, then considering the motion, if after deleting the conclusions that are pleaded, there are not sufficient allegations of fact which state a cause of action against the defendant, the motion must be granted, regardless of how many conclusions the count may contain, and regardless of whether or not they inform the defendant in a general way of the nature of the claim against him. Moreover, in regard to causes of action, especially injunctions, those allegations cannot be supported. They cannot be pled on information and belief. And there is a slew of cases, Hope v. Hope, 350 Ill. Act. 190, dismissing a claim for injunctive relief where the allegations were based on information and belief, Ambassador Foods v. Montgomery Ward, 43 Ill. Act. 100, again where the allegations were based on information and belief. Conclusions, opinion, or allegations on information and belief are not sufficient to support a claim for injunctive relief. If the court please, last night I happened to go through the complaint, and I would say that the best refutation of everything that's been argued here is for the court to look at the complaint, the amended complaint. I counted at least 20 of the paragraphs that are based on information and belief, and many of those paragraphs are the same paragraphs that counselors say allege facts which establish things which they believe are important to their case. I'm not going to read all of them, but on information and belief, development and operation, this is paragraph 37, of a silica mine in close proximity, homes and farms will adversely affect the value of their property. That's on information and belief. That's a conclusion. That's not a fact. On information and belief, in other rural areas where silica and mining operations have been developed, the value of residential properties and farmland located close to a mine has decreased. That's information and belief. That is a conclusion. It is not an allegation of fact. One of the dangerous things about this case is that if this case was to be tried, what would the plaintiffs prove? They'd prove that there's a possibility that something might happen to them, that they're hysterical about the possibility that sand might somehow get onto their property and affect them. Maybe it won't get onto their property. There's no factual evidence as to any of those things actually taking place. Prospective nuisance is a rare thing, and the courts are reluctant to grant a prospective nuisance, and certainly an injunction for prospective nuisance, based on a lack of evidence that there is imminent danger to the people involved. Remember that if, in fact, there is some nuisance that's created, if there is some violation of any of the numerous laws that impact the operation of a sand mine, what's the relief that these plaintiffs can seek? They can file an action based on an actual violation of something, whether it's an environmental law or whether it's an actual imposition or nuisance that's taking place, but to speculate that there's going to be a nuisance just because they don't like mining and they are afraid of mining when there are other mines in the area that have been operating, and in fact, mines have been operating in La Salle County for over 150 years. This isn't a new thing, and the record shows that there are mines, based on the exhibits that were shown in the court, part of the attached exhibits, that are closer to some of the plaintiffs, at least some of the original plaintiffs, that are right in North Utica. And so these allegations certainly do not justify the kind of claims that I heard made here as part of the oral argument and the kind of claims that are made in the brief. The court would have to reverse basic holdings of the Illinois Supreme Court as to what constitutes fact and what does not. Well, I want to ask this question. Yes, sir. If your logical conclusion might lead one to say there's no such thing as a prospective nuisance. Not at all. They cited a very good case, the city of Wilsonville, or the village of Wilsonville case, where Wilsonville itself brought the action. And what did we have there? We had a waste disposal site that was built on top, we know this factually, built on top of a coal mine. And there was plenty of evidence that they intend to bring in chemicals that would be dangerous to drinking water, and that this coal mine, the tunnels from the coal mine led into the areas where there was the drinking water. That is a situation where it was, and that was a full-blown trial. But it clearly demonstrated that there was something different, there was something unique, and the danger was real. And there were experts who came in and testified about the real danger. No, that's a full-blown trial. We're not there yet. Well, that's right. But in this case. What about their pleading that allowed them to go to a full-blown trial? In that case, well, we don't know exactly what the pleadings were. But the pleadings were. That's the only thing before us. Well, I understand that, Your Honor. But you can't use conclusions and assumptions. Let's just take part of it. Is it possible that the wind might come up and blow sand onto someone's property? Whose property? Which of these plaintiffs' property? Or is it possible that there might be lights somewhere on the mining property shining? Whose property would it shine? And why wouldn't it shine if something else was built there? What if a gas station was built there? Would there be lights? This is so speculative as to be on the realm of anything like Wilsonville. Okay. So what you're saying, let's take lights. Okay. So what you're saying is that for this complaint to pass muster, okay, under Supreme Court law, there would have to be an allegation about illumination, direction of illumination, on these specific individuals' property. That's correct. Or like a prevailing wind. It could be a prevailing wind. But it has to be even more because silica doesn't just exist, as is pointed out. It has to be in effect. The silica itself. Sand is everywhere. We go to the beach where we've got sand. And when the farmers are plowing their crops, there's dust that has the sand in it. So that's everywhere. They're talking about something that's even further removed. You've got to have blasting, which might actually create individual silica parts, and which might then leave the site, even though there are supposed to be regulations in place to keep the sand on the site. So why should we believe that any one of these plaintiffs is going to, in fact, be injured? There's no basis for that. The speculation is remoteness upon remoteness. You'd have to have one circumstance lead to another circumstance. That's not fact. That's speculation. And that's all they'll be able to prove. Can't we parse this complaint and figure out what's speculative and what isn't? I mean, each of these paragraphs have various complaints in them, right, about what might happen. Well, excuse me. And we can parse them, can't we not? Say this one is speculative. Your Honor, here's part of the problem. Isn't there going to be traffic? Everybody knows. Yes, and traffic is... Truck traffic is not like a police. Well, that's right. But truck traffic could come from any kind of a use. And the law is pretty clear. This Wayne case makes it clear that truck traffic is not a nuisance. The fact that there's truck traffic in a farming area, I might complain about the fact that there's tractors on the road. Maybe that's a nuisance to me. But truck traffic itself is not a nuisance. That's definitively it. That was in the Swain case which we cited. That's not a nuisance. So in terms of parsing it, the problem is it has to be parsed in the context of what they're seeking to obtain. They have a theory of law. There are two theories that are still remaining before you, Your Honor. One is the prospective nuisance which, as the Court knows, is extremely rare in granting a prospective nuisance. That's a rare thing. And the other is the validity of the ordinances themselves, the zoning ordinance. There's a presumption of validity in favor of these ordinances. You have to allege facts that overcome that presumption of validity. You have to allege facts that show that the ordinances are arbitrary and capricious, that they're without any rational basis. But before you even get to that, the Illinois Supreme Court said in the Living Word case, the City of Chicago Heights v. Living Word Outreach, Full Gospel Church, 196 Illinois 2nd 1, thus the appropriate standard to be used in determining whether a requested special exception use would have an adverse effect and therefore should be denied is whether there are facts and circumstances, facts that show the particular use proposed, that the particular location proposed, would have any adverse effects above and beyond those inherently associated with such a special exception use, irrespective of the location within the zone. Well, within all of the A1 zone, you can have mining. That's true both in the county and in North Utica. That law is not being challenged. The underlying law dealing with the validity of this type of use in farm country is not being challenged. That is the law. So you have to allege facts which would establish that the special use at this location would be different, or unique is what they talk about, than any other place. There are facts in this complaint, other than the fact that these plaintiffs happen to live there. There's nothing unique, Your Honor, to talk about. The creek, there are creeks all over La Salle County. And even in regard to that, there are allegations there may be flooding. There may possibly be, the creek they say in their allegations already floods. But there may be flooding. But there may not be flooding, because may means may not. That's not a fact. What are they going to prove, that there may be flooding? So when Your Honor asks about parsing this complaint, it is not possible to parse it in regard to the standards that they have to meet. That's part of what we were showing in terms of the facts. It's not just the fact that they allege conclusions, their own conclusion. It's not just the argument that they base much of what they allege on, quote, information and belief. But then none of the allegations would satisfy the standards that have to be met under the law. There's no allegations that would satisfy the Living Ward case. I don't have time to go into all of the La Salle factors, but even looking at the La Salle factors, the first one, the most important one, is the one dealing with what's the zoning and uses of nearby property. Well, if you look at the maps that are in the record, you'll see that the zoning is A1, which allows for mines. So that's satisfying. And you'll also find that the uses include mines. There are mines in North Utica already. Now, mines that are not far away from where these people are located, in terms of using a half mile or a mile distance or a mile and a half, those mines are operated. They don't seem to be complaining about those mines, but this mine they just don't like. Okay, thank you. So in regard to that issue, I'd like to also point out that they make reference to the Comprehensive Plan. And the Village of North Utica points out in the Comprehensive Plan, which is important language, that the mining industry is vital to the tax base of Utica and supplying jobs to people in and around LaSalle County. From the point of view of planning and uses, mining is an important part of the economy. And so their arguments related to that are refuted by the very legal documents that are part of the record. As far as what they might allege in the future, they had three chances to allege a cause of action. They haven't indicated to this court what they would say differently. Did the court abuse its discretion in not granting them a fourth bite of the apple? What would they allege any differently than what they've alleged already? Let's put it in very clear, concise terms. Legislatively, they are opposed to mining. They are in the farm industry, and they don't like mining. There are thousands and thousands of acres of farm that can still be used in our view. We're not closing down the farm industry by having another mine in this location where mines have existed for over 150 years. And there is nothing unique about this mine that's any different than how any of these other mines. So unless the court is willing to say that they can show by the allegations here that a mine is a nuisance per se, in effect what that would be doing is saying that mining is illegal under the A-1 zoning because the legislative findings and the legislature has determined that it is legal and that it is compatible with the farms in the area, all within the A-1 zoning. The court should not undertake to serve as a super zoning board, and it shouldn't undertake to usurp the function of the legislature. Oh, I'm sorry, Your Honor. I just got carried away a little. I apologize. Yes. It appears to me that they have stated facts. It sounds like what you're wanting them to do is prove their facts in their complaint. Well, yes. We accept the facts that they've pleaded as true. And then there's a case where they either prove or they don't prove the allegations in the complaint. I just looked at one or two of the information and belief allegations, and it appears that although the allegation says on information and belief, there are attachments that substantiate the allegation. So just the magic words information and belief is not enough to disqualify what they're saying. Your Honor, but what does disqualify, if you look at some of the attachments, you're looking at a study that was done in Canada of a residential neighborhood and a gravel mining operation. That's an attachment. It has no bearing or relationship to this case or to this situation. Those attachments have no relationship to this case. No, but they do show that in some place there have been these kinds of effects. And they're making the allegation. They have to prove them. Well, Your Honor, but it's totally irrelevant, the question of whether in Canada, in a residential neighborhood, this is an A1 farm area. Who cares if in a residential neighborhood a gravel pit may have affected values? And by the way, Your Honor, there was nothing that showed that the farm values are affected. In fact, if anything, everyone knows that the farm values have been going up because people are looking at the possibility of also doing mining. So that argument, what they would prove would just be speculative. So from that perspective, I ask the Court one thing. You can look at the record itself. I apologize for going over my time. I thank you, but I would once again say that the Court should not usurp the legislative prerogative of the legislative bodies that reviewed this, that heard all the evidence, that granted the special use, they heard the same objections. The zoning itself, the underlying zoning, is not being challenged, which allows for mining in this area all over. And the Court certainly can find nothing here that would indicate that there's something unique and different about this area from all other areas where the A1 zoning exists. I thank you once again for your time. I appreciate the opportunity to appear before the Court. Thank you. Thank you. Ms. Nelson. Thank you. Your Honors, I'd like to start by stating that defendants have repeatedly mischaracterized what this case is about. We are not asking this Court to measure the competing interests of mining versus farming, nor are we challenging the designation of mining as a special use in the zone. Inclusion of mining in the A1 zoning district, however, as a special use, does not automatically mean that every piece of property within that zone is suitable for that particular special use. This is precisely why courts have developed the LaSalle-Sinclair factors and the living word standard to assess whether allowing that particular special use is arbitrary and capricious, and we've alleged here in our complaint that it is. Plaintiffs are merely asking this Court to apply well-established law to protect their rights. One avenue for them to do that is the well-recognized claim of prospective nuisance. Counsel indicated that prospective nuisance is rare, those cases. That is not correct. We have cited multiple cases in our brief showing that prospective nuisance is alive and well in Illinois courts, and that has been applied recently. The Wilsonville case, the Nichols case, the Fink case, the Helping Others case, the Great Atlantic case, many of these cases are from recent years. Another important point to refute, this is not beach sand that we're talking about here. This is silica sand. This is a known carcinogen. Mr. Cope referred to these plaintiffs as hysterical. I would be hysterical, too, if somebody was going to build something that was going to blow cancer-causing material onto the land where they live. Well, here's the problem is that everybody's getting into, you know, The facts are in the complaint that silica sand is a carcinogen, and that this mine will blast six days a week, and that the blasting will cause silica sand to be exposed, and that the wind blows in every direction, and as a result that this sand will land on these plaintiffs' properties, and they will be subject to the harms from that sand. Also, responding to the fact that... That's in the complaint. That is in the complaint, Your Honor. It's in the paragraphs addressing silica sand at the outset, which are paragraphs 65 to 70 of the complaint. In addition, the complaint does not merely rely on conclusions or facts that are unsupported by factual allegations. It is perfectly appropriate for the plaintiffs to plead on information and belief, and we have cited case law in our reply brief. This is page 12 of the brief. The Cohen case, rejecting the argument that claims are defective if made on information and belief, especially when those allegations are within the knowledge of the defendants, which here they are because they will be the party that is operating this mine. In addition, it is also appropriate for the cases cited by the defendants that were referenced during the argument involving the plaintiffs, seeking temporary injunctive relief. Those cases are enacted here. One minute. With regard to the comprehensive plan, the important part of the comprehensive plan for purposes of this complaint are the fact that the comprehensive plan specifically designates this land that the mine will be located on to remain as agricultural. Comprehensive plan recognizes the importance of maintaining the rural and agricultural nature of this area, and we have cited to that in our complaint. In addition, counsel also referred to the fact to made an argument that truck traffic does not constitute a nuisance here. We have cited a case in our complaint where the great Atlantic case where traffic, not particularly truck traffic, but traffic was found to be a harm that sufficiently alleged a nuisance claim. In addition, there are many other allegations of harm in this complaint. Silica is a nuisance. Flooding is a nuisance. Blasting is a nuisance. Lights are a nuisance. All of these things are well-plaid in the legend complaint. For these reasons, we ask that the court reverse the dismissal of plaintiff's second amendment complaint. Thank you, Ms. Nelson. I appreciate it. Thank you all. Thank you both for your argument today. We will take this matter under advisement and get back to you with a written disposition within a short period.